IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ZIAD KAMAL BOU HAMDAN,

       Plaintiff,

vs.                                                                                        No. CIV 07-700 JB/ACT

MICHAEL CHERTOFF, Secretary of Department
of Homeland Security, ALBERTO GONZALES,
U.S. Attorney General, EMILIO T. GONZALEZ,
Director of United States Citizenship and
Immigration Services, RAYMOND P. ADAMS,
District Director of United States Citizenship and
Immigration Services, El Paso District Office,
BETTY GARCIA, Officer in Charge of United
States Citizenship Immigration Services,
Albuquerque Sub Office, ROBERT S. MUELLER,
III, Director & Federal Bureau of Investigations,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendants' Motion to Dismiss Based

on Mootness, or in the Alternative for Remand and Memorandum in Support, filed December 3,

2007 (Doc. 26); and (ii) the Unopposed Request for Expedited Ruling, filed December 4, 2007 (Doc.

30). The Court held a hearing on the motions on December 7, 2007. The primary issues are: (i)

whether the Court should dismiss Plaintiff Ziad Kamal Bou Hamdan's Complaint as moot because

the United States Customs and Immigration Service ("USCIS")[1] belatedly issued a decision denying

Hamdan's application for naturalization on November 19, 2007; (ii) whether, in the alternative, the

---

[1]"The Homeland Security Act of 2002 abolished the Department of Justice's Immigration and
Naturalization Service and transferred its function to [ ]USCIS. 6 U.S.C. §§ 291, 271. In addition,
the Secretary of Homeland Security was given authority over immigration laws. 8 C.F.R. § 103.1."
Castracani v. Chertoff, 377 F.Supp.2d 71, 72 n.3 (D.D.C. 2005).

Court should remand the matter to the agency for a final administrative review decision with instructions to render such decision within the 180-day time period that the regulations provide; and (iii) whether the Court should issue an expedited ruling on the Defendants' motion to dismiss for mootness by December 19, 2007.  Because Bou Hamdan needs a prompt ruling from the Court so that he can decide whether to seek an administrative appeal of the USCIS' determination, the Court will grant the request for an expedited ruling and will issue an expedited ruling before 10:00 a.m. on December 17, 2007 on the United States' motion.  Bou Hamdan's counsel has indicated that he has an appointment with the USCIS scheduled for December 17, 2007.  <u>See</u> Transcript of Hearing(taken December 7, 2007)("Tr.") at 2:23-3:4 (Johnson).[2]  The Court denies Defendants' Motion to Dismiss Based on Mootness, or in the Alternative for Remand and Memorandum in Support and will retain jurisdiction over the case and proceed to trial.  Because the USCIS has not made a final determination in Bou Hamdan's favor, there remains a live case or controversy between the parties, and thus the harm Hamdan complains of is still ongoing. The Court concludes that 8 U.S.C. § 1447 (b) does not confer exclusive jurisdiction.  The Court reads the plain language of the statute as conferring jurisdiction on the federal court if the USCIS has not ruled on an applicant's application within 120 days, and there is nothing in the statute that deprives the USCIS of jurisdiction.

## <u>FACTUAL BACKGROUND</u>

Bou Hamdan is a forty-one year old native of Lebenon.  <u>See id.</u> ¶ 8, at 3.  He became a lawful permanent resident of the United States on May 31, 2000.  <u>See id.</u>  On October 17, 2006, Bou Hamdan filed his N-400 form.  <u>See</u> Plaintiff's Complaint for Declaratory Relief in the Nature of

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Mandamus and Petition for a Hearing on Naturalization Application Pursuant to 8 U.S.C. § 1447(b) ¶ 2, at 2, filed July 25, 2007 (Doc. 1)("Complaint").  Officer Argie Navarette interviewed Bou Hamdan at the USCIS Albuquerque Sub-Office on March 13, 2007.  See id. ¶ 3, at 2.  Bou Hamdan represents that he successfully passed the English language, history, government tests, and FBI background check.  See id.  More than 120 days passed after Bou Hamdan's interview without any decision by the USCIS.  See id.

## PROCEDURAL BACKGROUND

On July 25, 2007, Bou Hamdan filed a Complaint against the Defendants petitioning the Court for a hearing on his naturalization application.  See Plaintiff's Complaint for Declaratory Relief in the Nature of Mandamus and Petition for a Hearing on Naturalization Application Pursuant to 8 U.S.C. § 1447(b) at 1, filed July 25, 2007 (Doc. 1)("Complaint").  Bou Hamdan explained that he brought his action "to compel defendants to perform a duty they owe to [him]; or for this Court to hold a hearing on [his] naturalization application, adjudicate same and grant him naturalization pursuant to 8 U.S.C. § 1447(b)."  Complaint ¶ 1, at 2.  Bou Hamdan also brought the action "to compel defendants and those acting under them to take action on [his] naturalization application, submitted on an N-400 form on October 17, 2006."  Id. ¶ 2, at 2.

Bou Hamdan contends that: "More than 120 days have passed since the interview in this matter, thus vesting jurisdiction with this Court under 8 U.S.C. § 1447."  Id. ¶ 4, at 2.  Bou Hamdan contends that the Court has jurisdiction "pursuant to 8 U.S.C. § 1447(b), with jurisdiction being had under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 2201 (declaratory judgment) and 5 U.S.C. § 701 (Administrative Procedures Act)."  Id. ¶ 6, at 2.  Bou Hamdan requests "a hearing before this Court pursuant to 8 U.S.C. § 1447(b) and also seeks a de novo judicial determination of his naturalization application and a grant of naturalization from this court."  Complaint ¶ 24, at 6.

Alternatively, Bou Hamdan requests that "the Court remand the application to USCIS with an order that it immediately adjudicate his application."  Id. ¶ 25, at 6.

The USCIS Albuquerque Field Office issued a decision denying Bou Hamdan's application for naturalization on November 19, 2007.  See Defendants' Motion to Dismiss Based on Mootness, or in the Alternative for Remand and Memorandum in Support ("Motion"), filed December 3, 2007 (Doc. 26); id., U.S. Department of Homeland Security Decision at 1(dated November 19, 2007) ("USCIS' decision").  As indicated in the USCIS' decision, Bou Hamdan has a right to seek administrative review under § 336(a) of the Immigration and Nationality Act. See USCIS decision at 1.

Bou Hamdan filed a Motion for Summary Judgment seeking to compel the USCIS' adjudication of his naturalization application.  See Motion for Summary Judgment at 7, filed October 10, 2007 (Doc. 24).  Bou Hamdan withdrew his Motion for Summary Judgment on November 28, 2007.  See Doc. 25.

On December 3, 2007, the Defendants filed with the Court a motion to dismiss Bou Hamdan's Complaint based on mootness.  See Motion.  The Defendants request that the Court dismiss this action without prejudice because of mootness or, in the alternative, that the Court remand the matter to the agency for a final administrative review decision with instructions to render such decision within the 180 day time period that the regulations require.  See Motion at 15-16. The Defendants contend that 8 U.S.C. § 1447(b)'s  plain language supports concurrent jurisdiction between this Court and USCIS.  See Motion at 2-8.  "The clear language shows that jurisdiction for a district court is premised on a naturalization application that has not yet been adjudicated by the USCIS, unless the applicant has exhausted all of his administrative remedies."  Id. at 4 (citing 8 C.F.R. § 336.9(d)).  The Defendants contend that their construction of the statute is consistent with

8 U.S.C. § 1421(c).  See Motion at 8.  The Defendants argue that "[t]here is no inconsistency between construing § 1447(b) to provide for concurrent jurisdiction and the judicial review provisions set forth in § 1421(c)."  Motion at 9.  The Defendants also contend that § 1447's legislative history and congressional intent support their construction.  See Motion at 9-13.  Finally, the Defendants argue that, even if exclusive jurisdiction is vested in the Court, this matter should be remanded to the USCIS for a final agency decision on Bou Hamdan's application.  See Motion at 13-15.

Bou Hamdan opposes the Defendants' motion.  See Plaintiff's Response to Defendants' Motion to Dismiss Based on Mootness and Request for Expedited Hearing on Naturalization Application, filed December 4, 2007 (Doc. 27) ("Response").  On December 4, 2007, Bou Hamdan filed his response to the Defendants' motion.  See id.  Bou Hamdan contends that his request for relief from the Court in the form of a hearing on his naturalization application is not moot.  See Response at 2.  "In this case, it is without dispute that USCIS failed to make a decision on [Bou Hamdan's] naturalization application within 120 days of his first interview in March 2007."  Id.  Bou Hamdan argues that "[t]he 120-day period commences from the date of the first examination regarding a naturalization application."  Id. (citing 8 C.F.R. §§ 335.3 and 336.1).  Bou Hamdan contends that the "USCIS' purported denial of [his] application is invalid because USCIS did not have jurisdiction to deny his naturalization application."  Response at 3.  Bou Hamdan maintains that once the Court has acquired jurisdiction of a case, either through the appellate process or because USCIS failed to act within 120 days, "jurisdiction for decision making and administering the oath of citizenship lies exclusively with [the] [C]ourt."  Id. (citing H.R. Rep. No. 101-187, at 14 (1990)("Upon petitioning the court, jurisdiction for decision-making and conducting the final oath of citizenship lie with the court.").  Bou Hamdan argues that 8 U.S.C. § 1447 (b) confers exclusive

jurisdiction over his naturalization application because 120 days have passed, he has properly invoked the Court's authority, and there are no deportation proceedings currently pending against him. See Response at 4 (citing United States v. Hovespian, 359 F.3d 1144, 1164 (9th Cir. 2004)). Bou Hamdan states that "[t]he majority of district courts to have considered the issue have relied upon [United States v. ]Hovespian, 359 F.3d 1144, 1164 (9th Cir. 2004), to hold that § 1447(b) vests exclusive jurisdiction in the district court."  Response at 6.  Bou Hamdan contends that the Defendants "erroneously urge the court to interpret section 1447(b) in the context of 8 U.S.C. § 1421 (c))."  Response at 6.  Bou Hamdan asserts that "[s]ections 1421(c) and 1447(b) are not in conflict" but "[t]o read the statute the way defendants would want the court to read it, would essentially vanish section 1447(b); it would be rendered surplusage."  Response at 7.

On December 4, 2007, the Defendants filed a reply to Bou Hamdan's response.  See Reply in Support of Defendants' Motion to Dismiss Based on Mootness, or in the Alternative for Remand, filed December 4, 2007 (Doc. 28)("Reply").  The Defendants deny that H.R. Rep. No. 101-187 supports Bou Hamdan's argument, because it "is not part of the direct legislative history for the 1990 amendments to the immigration laws which enacted the current language in 8 U.S.C. § 1447." Reply at 2 (citing 8 U.S.C  § 1447, Historical and Statutory Notes, Pub. L. 101-649).  The Defendants contend that H.R. Rep. No. 101-187 "was a draft committee report on earlier proposed legislation."   Reply at 2.  The Defendants contend that 8 U.S.C. § 1447(b) is read in conjunction with 8 U.S.C. § 1421 (c), and that 8 U.S.C. § 1447 (b) "should not be read to short circuit that administrative review process but should be read to compliment it by providing a remedy only when the agency is slow to act." Reply at 2.  The Defendant contends that "Congress intended to provide unsuccessful applications who have exhausted all of their administrative remedies with de novo judicial review through § 1421(c), whereas § 1447(b) was designed to provide impatient applicants

with the ability to petition a district court as another avenue to obtain an adjudication if the agency persists in failing to act."  Reply at 2 (emphasis in the original).

Bou Hamdan's counsel, Ms. Erlinda Johnson, has been in contact with Mr. John Zavitz, the Defendants' counsel, who advised that the Defendants concur with a request for expedited ruling on the motion to dismiss.  See Unopposed Request for Expedited Ruling ¶ 6, at 2, filed December 4, 2007 (Doc. 30).

The Court held a hearing on this matter on December 7, 2007.  The Defendants suggested that the appropriate action would be for the Court to remand Bou Hamdan's application with a reopener.  See Tr. at 8:8-10 (Zavitz).  The Defendants did not explain what a reopener was.  See id. The Defendants also suggested "that would be appropriate or it could be just by remand and with a reopener or something like that.  I think if [Bou Hamdan] . . . wanted to save an additional filing fee or something although I think at this point the Court would more properly just dismiss the action and allow them to refile a new action once they file a final administrative decision is entered."  Id. at 8:10-14 (Zavitz).  The Defendants contended that "the power to remand with instructions is fully consistent with concurrent jurisdiction by giving the Court the power to order the USCIS to take action within a specific time [period]."  Id. at 8:15-19 (Zavitz.).  The Defendants suggested that the Court order the USCIS to take action within the 180 days provided by 8 C.F.R. § 336.9(d).  See id. at 8:18-19 (Zavitz).  The Defendants conceded that, were the Court to exercise its concurrent jurisdiction and issue a ruling before the USCIS, then "it would be the first decision and therefore would take precedence."  Tr. at 10:1-6 (Court & Zavitz).  The Defendants also conceded that the Court has the ultimate decision-making authority under 8 U.S.C. § 1421(c).  See Tr. at 10:11-16 (Court & Zavitz).  The Defendants agreed that the Court is free to ignore the USCIS' ruling on Bou Hamdan's application, because of the Court's power under 8 U.S.C. § 1421(c).  See Tr. at 11:23-12:2

(Court & Zavitz).

The Defendants acknowledged that Bou Hamdan filed suit after the 120-day period in 8 U.S.C. § 1447 (b), so that there was no dispute that the Court had jurisdiction at one time.  See Tr. at 11:9-21 (Court, Johnson & Zavitz).  The Defendants argued that H.R.Rep. No. 101-187 evidences a congressional intent for jurisdiction to be concurrent between the Court and USCIS:

> And that language, if you see on page 5 of the report was when there's a failure to make a determination under section 335 before the end of a 90 day period after the date . . . the examination is conducted the United States district court in which the applicant resides shall upon demand of the petitioner exercise exclusive jurisdiction over the matter.  That language was not carried forward into the final language of the statute.  That change I think is significant indicia of congressional intent that jurisdiction be concurrent.

Tr. at 12:11-20 (Zavitz).  The Defendants also argued, however, that even if the Court has exclusive jurisdiction, "it makes sense to remand this matter to the USCIS for all the reasons [that] typically require administrat[ive] exhaustion, exhaustion may moot the matter, it would . . . provide more fully developed factual records so the matter could be determined perhaps on motions if judicial review is sought."  Tr. at 14:13-19 (Zavitz).

Initially Bou Hamdan contended that his argument was dependent upon the Court finding that 8 U.S.C. § 1447 (b) stripped the USCIS of its jurisdiction once an applicant files in federal court.  See id. at 15:7-12 (Court & Johnson).  Bou Hamdan then argued: "[A]ctually I think you can reach that decision without perhaps finding that jurisdiction is exclusive."  Id. at 15:16-18 (Johnson).  Bou Hamdan indicated that he would agree with the Court retaining concurrent jurisdiction, setting this matter for trial, issuing an initial scheduling order, while he exhausts his administrative remedies with the USCIS.  See id. at 30:1-23 (Court & Johnson).  Bou Hamdan contends that 8 U.S.C. § 1421 is inapplicable, because it "allows the application to appeal to the district court had he continued with the administrative process."  Id. at 18:11-13 (Johnson).  Nevertheless, Bou

Hamdan contends that "[t]he very word remand indicates that Congress indicated a hierarchy." Id. at 19:2-4 (Johnson). Finally, Bou Hamdan contends that the USCIS' decision does not moot this matter, because he invoked the Court's jurisdiction under 8 U.S.C. § 1447 (b) to hold a hearing on his naturalization application. See id. at 37:7-12 (Johnson).

## LAW REGARDING MOOTNESS

There are two mootness doctrines: (i) constitutional mootness, which is based on Article III of the Constitution; and (ii) prudential mootness. See Am. Constitutional Law Foundation, Inc. v. Davidson, 211 F.3d 1277 (Table), No. 99-1142, 2000 WL 488460 at * 2 (10th Cir. April 26, 2000)("A court may also find a party's claims moot under the doctrine of "prudential mootness" even if there is no constitutional mootness problem."). Constitutional mootness is a threshold jurisdictional issue that goes to the power of the court to hear the case. Prudential mootness, in contrast, goes to the court's discretion to determine whether the circumstances have so changed that any meaningful relief is no longer available.

Constitutional mootness is a threshold jurisdictional issue that the court must determine before the merits. See Out of Line Sports, Inc. v. Rollerblade, Inc., 213 F.3d 500, 501 (10th Cir. 2000); In re Yellow Cab Co-op. Ass'n., 132 F.3d 591, 594 (10th Cir. 1997)(citing Keyes v. School Dist. No. 1, Denver, Colo., 119 F.3d 1437, 1445 (10th Cir. 1997)). "A federal court has no power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it." Southern Utah Wilderness Alliance v. Smith, 110 F.3d 724, 727 (10th Cir. 1997)(citing Church of Scientology of California v. United States, 506 U.S. 9, 12 (1992)). "One commentator has defined [Article III] mootness as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" U.S. Parole Commission v. Geraghty, 445 U.S. 388,

397 (1980)(quoting Monaghan, <u>Constitutional Adjudication: The Who and When</u>, 82 Yale L.J. 1363, 1384 (1973)).

"Under both Article III and prudential mootness doctrines, the central inquiry is essentially the same: have circumstances changed since the beginning of litigation that forestall any occasion for meaningful relief. " <u>Southern Utah Wilderness Alliance v. Smith</u>, 110 F.3d at 727. "Simply stated, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." <u>Powell v. McCormick</u>, 395 U.S. 486, 496 (1969)(internal quotations omitted). When there is no reasonable expectation that the alleged violation will repeat itself and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," a case is moot, "because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law." <u>Los Angeles County v. Davis</u>, 440 U.S. 625, 631 (1979).

As the Court noted in <u>Chavez v. Board of Education of Tularosa Mun. Schools</u>, No. CIV 05-380 JB/RLP, 2006 WL 4060668 (D.N.M. Oct. 19, 2006)(Browning, J.),  "Article III of the Constitution limits the jurisdiction of the federal courts to particular cases and controversies. To satisfy Article III's justiciability requirements, plaintiffs must have standing, their claims must not be moot, and their cases must be ripe." No. CIV 05-380 JB/RLP, 2006 WL 4060668 at *4 (internal quotations omitted.).  "The burden of establishing mootness is a heavy one." <u>Id.</u>  A claim may become moot if "(i) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (ii) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." <u>Los Angeles County v. Davis</u>,  440 U.S. 625, 631 (1979).

## LAW REGARDING STATUTORY CONSTRUCTION

When interpreting statutes, the Court must start with the plain language.  See Been v. O.K. Industries, Inc., 495 F.3d 1217, 1227 (10th Cir. 2007)("We review issues of statutory construction de novo, interpret[ing] the words of the statute in light of the purposes Congress sought to serve. In so doing, we begin with "the language employed by Congress, and we read the words of the statute in their context and with a view to their place in the overall statutory scheme.")(internal quotations and citations omitted); United States v. Wright, 48 F.3d 254, 255 (7th Cir. 1995).  "It is well established that when the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms." Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004)(internal quotations omitted).  See In re Trans Alaska Pipeline Rate Cases, 436 U.S. 631, 643 (1978)(noting that a court may not disregard the statute's plain language unless a literal application of the statutory language "would lead to absurd results . . . or would thwart the obvious purpose of the statute")(internal quotations omitted).  "Courts indulge a strong presumption that Congress expresses its intent through the language it chooses.  Therefore, when the terms of a statute are clear and unambiguous, our inquiry ends and we should stick to our duty of enforcing the terms of the statute as Congress has drafted it." United Kingdom Ministry of Defense v. Trimble Navigation Ltd., 422 F.3d 165, 171 (4th Cir. 2005)(internal quotations omitted). See Public Lands Council v. Babbitt, 167 F.3d 1287, 1314 (10th Cir. 1999)("In examining . . . [statutory] language, we assume that the words chosen by Congress are employed in their ordinary sense and accurately express Congress'[ ] legislative purpose."), aff'd 529 U.S. 728 (2000).

## 8 U.S.C. § 1447(b)

Title 8, Section 1447 (b) of the United States Code provides:

If there is a failure to make a determination under section 1446 of this title before the

end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter.  Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b). "Judicial review in immigration matters is narrowly circumscribed."  Langer

v. McElroy, No. 00 Civ. 2741 (RWS), 2002 WL 31789757 (S.D.N.Y. Dec. 13, 2002)(quoting INS

v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999).  The district courts' review is limited:

The immigration statutes create two specific points at which a district court may intervene in the naturalization process.  First if the INS fails to render a decision upon an application within 120 days of the applicants' naturalization examination, the applicant may apply to the district court for the district in which he resides to conduct a de novo hearing on the application and the court may then determine the matter for itself or remand to the INS with instructions.  Second, if the INS denies a naturalization application-and that denial has been confirmed after an administrative appeal, consisting of a hearing before a senior naturalization officer-the disappointed applicant may seek de novo judicial review of the denial in the United States district court for the district in which she resides.

Langer v. McElroy, 2002 WL 31789757 at *2 (internal citations omitted).

In House Report No. 101-187, the purpose of the Naturalization Amendments of 1989,

including 8 U.S.C. § 1447(b), was described: "The purpose of the bill is to facilitate the acquisition

of United States citizenship for qualified aliens by establishing a system of administrative

naturalization."  H.R. Rep. No. 101-187, at 8 (1989).  The Judiciary Committee noted that

"[r]emoval of the 200-year-old naturalization process from the Judiciary is not a step taken lightly

by the Committee."  Id.  The Judiciary Committee noted, however, that "the increasing volume of

citizenship applicants and heavy dockets of the Courts in other areas leads the Committee to

consider a more streamlined process for those aspiring to citizenship."  Id.  The original language

for § 1447(b) provided: "Where there has been a failure to make a determination under section 335

before the end of the 90-day period after the date on which the examiner is conducted under such

-12-

section, the United States district court for the district in which the applicant resides shall upon the

demand of the petitioner exercise exclusive jurisdiction over the matter." Id. at 5.

The Code of Federal Regulations also provides for judicial review of denial determinations

on applications for naturalization.  8 C.F.R. § 336.9 provides:

> (a) General. The provisions in part 310 of this chapter shall provide the sole and
> exclusive procedures for requesting judicial review of final determinations on
> applications for naturalization made pursuant to section 336(a) of the Act and the
> provisions of this chapter by the Service on or after October 1, 1991.
>
> (b) Filing a petition. Under these procedures an applicant shall file a petition for
> review in the United States District Court having jurisdiction over his or her place
> of residence, in accordance with chapter 7 of title 5, United States Code, within a
> period of not more than 120 days after the Service's final determination. The petition
> for review shall be brought against the Immigration and Naturalization Service, and
> service of the petition for review shall be made upon the Attorney General of the
> United States, and upon the official in charge of the Service office where the hearing
> was held pursuant to § 336.2.
>
> (c) Standard of review. The review will be de novo, and the court will make its own
> findings of fact and conclusions of law. The court may also conduct, at the request
> of the petitioner, a hearing de novo on the application for naturalization.
>
> (d) Exhaustion of remedies. A Service determination denying an application for
> naturalization under section 335(a) of the Act shall not be subject to judicial review
> until the applicant has exhausted those administrative remedies available to the
> applicant under section 336 of the Act. Every petition for judicial review shall state
> whether the validity of the final determination to deny an application for
> naturalization has been upheld in any prior administrative proceeding and, if so, the
> nature and date of such proceeding and the forum in which such proceeding took
> place.

8 C.F.R. § 336.9.

In Kia v. INS, 175 F.3d 1014 (Table), No. 98-2399, 1999 WL 172818 at *1 (4th Cir. Mar.

30, 1999), the plaintiff filed suit in district court under 8 U.S.C. § 1447(b).  See 1999 WL 172818

at * 1.  INS denied his application, based on his inability to satisfy the English literacy requirements,

while his suit was pending.  See id.  The district court dismissed his complaint as moot.  See id. The

-13-

United States Court of Appeals for the Fourth Circuit summarily affirmed the dismissal, stating that it "agree[d] with the district court that the plain language of § 1447 suggests that the district court requires an unreviewed application in order to make a determination, and that the INS' denial of naturalization shortly after [the plaintiff] filed suit mooted the case and deprived the court of jurisdiction."  1999 WL 172818 at *1.  See Kembi v. INS, 8 Fed.Appx. 328, 330 (6th Cir. 2001)(stating that the district court's jurisdiction under 8 U.S.C. § 1447(b) "is premised on the INS' [sic] failure to make an administrative determination.").

In United States v. Hovsepian, 359 F.3d 1144 (9th Cir. 2004), the United States Court of Appeals for the Ninth Circuit held that the language of 8 U.S.C. § 1447(b) implicitly vests exclusive jurisdiction in the district courts over a naturalization application once an action is filed rather than providing the court concurrent jurisdiction with the agency.  In support of its interpretation of the statute, the Ninth Circuit held that the language providing the court with the option to determine the matter or to remand the application to the USCIS to have it determine the matter is inconsistent with a grant of concurrent jurisdiction.  See 359 F.3d at 1160.  The Ninth Circuit stated: "[H]ow can the court 'determine the matter' if the INS has the option to 'determine the matter', too, and essentially force the court to accept its view?"  Id.  The Ninth Circuit also asked: "[W]hy would the court need to provide for a 'remand' if the INS retained jurisdiction all along?"  Id. The Ninth Circuit reasoned that, when it "'remands a case to the district court, for example, [it] do[es] so because the district court has lost jurisdiction once [it] acquire[s] it upon the filing of a proper notice of appeal."  Id. The Ninth Circuit reasoned that, were the jurisdiction concurrent between the INS and the district court, and the INS "retain[ed] the power to grant or deny an application even after the district court has assumed jurisdiction over it," then the district court's ability to remand "to the Service to determine the matter" would be surplusage. Id.  The Ninth Circuit reasoned that, because the district

court is able to remand to the INS with instructions that the INS adopt the district court's findings and conclusions, "that is more consistent with exclusive jurisdiction than with concurrent jurisdiction." Id. at 1161.

The Ninth Circuit explained in United States v. Hovsepian, that 8 U.S.C. § 1447(b) requires the INS to make a decision within a particular time period and "specifies a consequence for failure to meet this deadline, namely, that the district court gains jurisdiction over the matter," because 8 U.S.C. § 1447(b)  is a jurisdiction-stripping statute.   359 F.3d at 1161 (citing Brock v. Pierce County, 476 U.S. 523 (1986)).  The Ninth Circuit reasoned that, because 8 U.S.C. § 1421(c) gives district courts "the last word," then "[i]t is illogical to hold . . . that § 1447(b) gives district courts jurisdiction to decide naturalization applications but, at the same time, allows the INS to truncate the courts' decision-making process by making factual findings and drawing conclusions about the applications, because reviewing courts may not defer to those findings and conclusions." United States v. Hovsepian, 359 F.3d at 1162.

The Ninth Circuit in United States v. Hovsepian, characterized 8 U.S.C. § 1447(b)  as  a mechanism for "impatient" applicants to skip the agency's analysis of their application and proceed directly to the step in which the district court conducts a de novo review of the application." United States v. Hovsepian, 359 F.3d at 1162. The Ninth Circuit concluded that concurrent jurisdiction between the district courts and the INS would undermine congressional policy objectives such as reducing the waiting time for naturalization applicants, streamline the naturalization process by reducing burdens on the courts and the INS, consistency and fairness of naturalization decisions, and give naturalization applicants the power to choose what forum would adjudicate their applications. See id. at 1163-64.

Many courts have adopted at least some of the Ninth Circuit's logic in United States v.

Hovsepian.  See Izraileva v. Chertoff, No. 8:07-CV-21-T-27MSS, 2007 WL 3120255 (M.D.Fla. Oct. 23, 2007)(holding that 8 U.S.C. § 1447(b) confers exclusive jurisdiction on the district courts); Frenkel v. U.S. Dep't of Homeland Security, No. 3:07-cv-1145 (VLB), 2007 WL 3090656 (D.Conn. Oct. 19, 2007)(finding that 8 U.S.C. § 1447(b) confers exclusive jurisdiction on the district courts)(relying upon United States v. Hovespian and Etape v. Chertoff, 446 F.Supp.2d 408 (D.Md. 2006)); Dimopoulos v. Blakeway, No. C-07-127, 2007 WL 922224 at *4 (S.D.Tex. Mar. 23, 2007)(holding that USCIS' denial of the plaintiff's naturalization application did not moot his case, because district court had exclusive jurisdiction over the case pursuant to 8 U.S.C. § 1447(b))(citing United States v. Hovespian,359 F.3d at 1161-64); Fuks v. Devine, No. 05 C 5666, 2006 WL 2051321 at * 1 (N.D. Ill. July 20, 2006)(agreeing with the reasoning in United States v. Hovespian and Meraz v. Comfort but  distinguishing the plaintiff's claim from the plaintiffs in United States v. Hovespian and Meraz v. Comfort, No. 05 C 1094, 2006 WL 861869 (N.D.Ill. March 9, 2006), because the plaintiff filed in the court after the USCIS instituted removal proceedings against him); Meraz v. Comfort, 2006 WL 861859 at * 2 (adopting the Ninth Circuit's reasoning in United States v. Hovespian and holding that the district court had exclusive jurisdiction under 8 U.S.C. § 1447(b) when the USCIS denied the plaintiff's application after he filed in federal district court); Castracani v. Chertoff, 377 F.Supp.2d at 73-75 (adopting the Ninth Circuit's reasoning in United States v. Hovespian and holding that the district court had exclusive jurisdiction under 8 U.S.C. § 1447(b) after the USCIS granted the plaintiff's application after he filed in federal district court); Dominguez v. Ashcroft, No. Civ. 04-1030-JE, 2004 WL 2632916 at *1 (D.Or. Nov. 18, 2004)(noting that, "[o]nce the federal court acquires jurisdiction, it is not divested by subsequent events, such as the agency's belated decision to take some action regarding the application.")(citing United States v. Hovespian, 359 F.3d at 1144).

The United States District Court for the Eastern District of New York agreed with the Ninth Circuit's analysis in United States v. Hovespian in Zaranska v. U.S. Dep't of Homeland Security. See 400 F.Supp.2d 500, 503 (E.D.N.Y. 2005). The district court agreed with the Ninth Circuit's observation that 8 U.S.C. § 1447(b) "both requires the [US]CIS to act within a certain period of time and specifies a consequence for failure to comply with the deadline (placing jurisdiction over the naturalization application in the district courts), thereby indicating an intent to strip the agency of jurisdiction." Zaranska v. U.S. Dep't of Homeland Security, 400 F.Supp.2d at 503. The district court "conclude[d] that the filing of a petition in district court pursuant to § 1447 strips the [US]CIS of jurisdiction, [and that] a denial issued by the [US]CIS after the petition is filed cannot have any effect, and § 1421(c) therefore becomes irrelevant to the analysis." Zaranska v. U.S. Dep't of Homeland Security, 400 F.Supp.2d at 504.

The majority opinion in Etape v. Chertoff, 497 F.3d 379 (4th Cir. 2007), essentially adopted the Ninth Circuit's reasoning in United States v. Hovespian. See 497 F.3d at 383-88. In support of its interpretation of the statute, the Fourth Circuit held that the language providing the court with the option to determine the matter or to remand the application to the USCIS to have it determine the matter is inconsistent with a grant of concurrent jurisdiction. See id. at 383-84. The Fourth Circuit noted that "[n]othing in the statute suggests that Congress intended that an agency could subvert Congress' choice to vest the district court with jurisdiction to determine the matter once an applicant files a timely § 1447(b) petition." Id. at 383 (internal quotations omitted). The Fourth Circuit explained that its holding that § 1447(b) vests the district court with exclusive jurisdiction

> furthers the twin congressional goals of streamlining the process but retaining applicants' judicial rights and ability to choose the forum that will adjudicate their applications . . . this holding does not in any way diminish the importance of the [US]CIS's expertise in reviewing naturalization applications. . . Congress has designed a system whereby the [US]CIS can and must employ much of its expertise

and resources well before the district court can possibly act.  It is only when the [US]CIS fails to evaluate the information it has gathered in a timely manner that a district court may step in, if asked.  And even then, the [US]CIS, as a party to any § 1447(b) action, can utilize its expertise by presenting its findings to the court.

Etape v. Chertoff, 497 F.3d at 386-87.  See Elaasar v. Mueller, No. 3:06 CV 2718, 2007 WL 3377445 (N.D. Ohio Nov. 14, 2007)(holding that district court jurisdiction is exclusive under 8 U.S.C. § 1447(a))(citing Etape v. Chertoff,497 F.3d 379 (4th Cir. 2007)).

In his dissenting opinion in Etape v. Chertoff, Senior Circuit Judge Hamilton stated:

To summarize, the language of § 1447(b) itself, the specific context in which that language is used, and the broader context of the statute as a whole . . . compels the conclusion that § 1447(b) does nothing more than grant district courts the authority to either decide naturalization applications pending more than 120 days following the [US]CIS's § 1446(b) examination or remand to the [US]CIS with instructions to determine the matter in order to avoid unreasonable delay.  In other words, given the plain meaning of § 1447(b), it cannot be said it strips the Attorney General or the [US]CIS of their authority and jurisdiction to decide a naturalization application simply because an applicant has filed a § 1447(b) petition with the district court.  Therefore, the [US]CIS's action in denying the appellants' respective naturalization applications mooted their respective pending § 1447(b) petitions and deprived the district court of subject matter jurisdiction in each instance.

Etape v. Chertoff, 497 F.3d at 396 (Hamilton, J., dissenting).  Judge Hamilton contended that "the plain language . . . makes abundantly clear that Congress fervently believed the Attorney General, through the employees of the [US]CIS, who possess unique expertise in the field of immigration and naturalization, is in the best position to decide naturalization applications."  Id. at 392.  Judge Hamilton explained that 8 U.S.C. § 1447(b) is a "potential escape hatch from delay in the administrative processing of naturalization applications . . . to spur the [US]CIS to decide naturalization applications or risk such applications being decided outside the agency."  Etape v. Chertoff, 497 F.3d at 393 (Hamilton, J., dissenting).  Judge Hamilton noted that, "[o]nce the [US]CIS has decided a naturalization application pending before the district court on a § 1447(b) petition, the reason for the § 1447(b) petition, to avoid unreasonable delay in obtaining a decision,

is moot." Etape v. Chertoff, 497 F.3d at 393 (Hamilton, J., dissenting). Judge Hamilton reasoned that "reading § 1447(b) as providing the district court with concurrent jurisdiction to decide naturalization applications fully supports Congress' delay-eliminating-purpose." Etape v. Chertoff, 497 F.3d at 393 (Hamilton, J., dissenting). "In the case of an application denial, the application is simply channeled back through the congressionally designed administrative process, which allows a review hearing before an immigration officer, 8 U.S.C. § 1447(a), and then ultimately, if the denial continues, de novo review before the district court on a fully developed administrative record." Etape v. Chertoff, 497 F.3d at 393-94 (Hamilton, J., dissenting).

In his dissenting opinion in Etape v. Chertoff, Judge Hamilton contended that the "superior efficiency of a de novo district court review on a fully developed record, pursuant to § 1421(c), as compared to initial review by the district court on perhaps no record at all or an incomplete administrative record, pursuant to § 1447(b), is obvious." Etape v. Chertoff, 497 F.3d at 394 (Hamilton, J., dissenting). Judge Hamilton also considered the case mooted, because "the [US]CIS's [sic] action in denying the applicants' respective naturalization applications unquestionably mooted their respective § 1447(b) petitions given that the allegedly wrongful behavior by the [US]CIS -- i.e., [US]CIS's failure to decide the appellants' respective naturalization applications within 120-days of their respective § 1446 examinations -- could not reasonably be expected to recur." Etape v. Chertoff, 497 F.3d at 395 (Hamilton, J., dissenting).

Several district courts, including the United States District Court for the District of Utah, which is within the Tenth Circuit, have found that 8 U.S.C. § 1447(b) does not divest the USCIS of the concurrent authority to act on the application despite the filing of an action in district court. See Perry v. Gonzales, 472 F.Supp.2d 623, 630 (D.N.J. 2007)("[T]he best way to effectuate the Congressional intent is to allow concurrent jurisdiction between [US]CIS and the District Court

following the filing of a Complaint with the District Court as authorized by § 1447(b)."); Sidhu v. Chertoff, No. CV F 06-1536 AWI DLB, 2007 WL 1119690 at *2-3 (E.D.Cal. Apr. 16, 2007)(distinguishing United States v. Hovespian because the USCIS denied the plaintiff's application and finding that the USCIS maintained jurisdiction to deny the plaintiff's application "despite pendency of [the] action."); Maki v. Gonzales, No. 2:06CV794 DAK, 2007 WL 2220532 at * 2 (D. Utah July 27, 2007)(noting that the Tenth Circuit has not decided the issue, but concluding that the USCIS maintained jurisdiction over the plaintiff's naturalization application even after she filed suit in the federal district court under 8 U.S.C. § 1447(b)); Al-Tubaili v. Gonzales, No. 2:06CV804 DAK, 2007 WL 2220550 at * 2 (D. Utah July 30, 2007)(finding "that the better reasoned view is that section 1447(b) does not divest the USCIS of jurisdiction."); Al-Saleh v. Gonzales, No. 2:06-CV-00604 TC., 2007 WL 990145 at * 1-2 (D. Utah Mar. 29, 2007)(finding that 8 U.S.C. § 1447(b) vests concurrent jurisdiction in the federal district courts); Farah v. Gonzales, No. Civ. 05-1944 DWFAJB, 2006 WL 1116526 at * 2 (D. Minn. Apr. 26, 2006)(affirming dismissal of plaintiff's application as moot and, alternatively, for failure to exhaust remedies under 8 U.S.C. § 1421(c)); .

The plaintiff in Al-Saleh v. Gonzales filed his complaint after the USCIS failed to grant or to deny his application within 120 days. See No. 2:06-CV-00604 TC, 2007 WL 990145 at *1. Approximately three months later, the USCIS acted on his application, and scheduled him for a naturalization ceremony and administration of oath of citizenship. See id. The district court noted that "the Tenth Circuit has not decided the question and there is a split of authority in the courts that have faced the question." Al-Saleh v. Gonzales, No. 2:06-CV-00604 TC, 2007 WL 990145 at *2. The court reasoned that, "[a]lthough the issue is far from clear, this court believes that the better reasoned view is that § 1447(b) does not divest the USCIS of jurisdiction." Al-Saleh v. Gonzales,

No. 2:06-CV-00604 TC, 2007 WL 990145 at *2.  The court explained that "permitting the USCIS to continue its work even while a lawsuit is pending will advance the congressional goal of timely resolution of naturalization applications." Id.  Moreover, the court was not convinced that "[t]he fact that § 1447(b) gives an applicant the right to file suit in federal court after the 120-day period has elapsed . . . [is enough], by itself, a sufficient indication that Congress intended to strip the USCIS of jurisdiction once a federal suit is filed." Id.

Federal district courts have elected to remand cases back to the USCIS under their authority pursuant to 8 U.S.C. § 1447(b).  In Khelifa v. Chertoff, 433 F.Supp.2d 836, 842 (E.D.Mich. 2006), a federal district court found that it had jurisdiction over a plaintiff's complaint filed pursuant to 8 U.S.C. § 1447(b) and elected to remand back to the USCIS. See 433 F.Supp.2d at 842.  The court noted that the "CIS generally should be given the opportunity to decide applications for naturalization in the first instance." Id.  The court decided that remand was appropriate because, under the "ordinary remand rule," "'[t]he agency can bring its expertise to bear on the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides.'" Id. at 843 (quoting INS v. Ventura, 537 U.S. 12, 17 (2002)).  The ordinary remand rule states that "a remand is consistent with the rule that, '[g]enerally speaking, a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands.'" Khelifa v. Chertoff, 433 F.Supp.2d at 843 (quoting INS v. Ventura, 537 U.S. at 16).  The court rejected the plaintiff's argument that remand was not appropriate because his criminal background check had already been completed. See Khelifa v. Chertoff, 433 F.Supp.2d at 842.  The court disagreed: "[E]ven with the benefit of a completed background investigation, this Court still could confront many of the concerns that the ordinary remand rule seeks to address." Id. (internal

quotations omitted).   The court "fully acknowledge[d] its authority under § 1447(b)  to decide Plaintiff's naturalization application on the merits," but found remand "properly comport[ed] with the ordinary remand rule under which the courts generally should defer to agencies that bear the statutory obligation to make the initial determination on particular matters within their presumed expertise and delegated authority."   Khelifa v. Chertoff, 433 F.Supp.2d at 844-45 (internal quotations omitted).  See Karsch v. Chertoff, No. C07-0957RSL, 2007 WL 3228104 at *1-2 (W.D.Wash. Oct. 29, 2007)(holding that remand was appropriate under the district court's exclusive jurisdiction under 8 U.S.C.§ 1447(b) where the agency agreed to adjudicate the matter within thirty days of remand, a remand would serve interests of judicial economy, and the agency is in the best position to render a decision "because it is the designated agency responsible for determining the issuance of immigration benefits.");  Repeshchuk v. Gonzales, No. 07-2017 (RHK/AJB), 2007 WL 2361450 at *2-3 (D.Minn. Aug. 5, 2007)(holding that the court had jurisdiction under 8 U.S.C. § 1447(b), but that remand was appropriate because final adjudication of the matter would require expertise that the court did not possess and "if the Court were to adjudicate Repeshchuk's Application, it would create an incentive for others to 'flood the system' with similar actions in an attempt to 'jump the line' and expedite their naturalization applications, to the detriment of others.").

        In Elaasar v. Mueller, the court determined that it had exclusive jurisdiction under 8 U.S.C. § 1447(a), but chose to remand the matter to the USCIS.  See 2007 WL 3377445 at *3.  The court noted that, "[w]hile a majority of courts have concluded that § 1447(b) grants them exclusive subject matter jurisdiction, they have declined to determine the merits of the application, instead [of] remanding the case to USCIS as a more appropriate remedy."  Id.  The court believed that "the USCIS, at this stage, provide[d] a better forum for adjudication."  Id.  The court noted that the USCIS had already denied the plaintiff's application, but believed that "remanding the case

allow[ed] Plaintiff to exhaust his administrat[ive appeal under § 1447(a)." The court noted that, "[i]f Plaintiff continues to believe the application has been unfairly denied, Plaintiff has the opportunity for further appeal to [the court.]" Elaasar v. Mueller, 2007 WL 3377445 at *3.

Congress provides naturalization applicants the ability to obtain a de novo review of their denied applications in federal district court under 8 U.S.C. § 1421(c).  8 U.S.C. § 1421(c) provides:

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c).  See Dimopoulos v. Blakeway, No. C-07-127, 2007 WL 922224 at *4-5 (S.D.Tex. Mar. 23, 2007)(rejecting the argument that the plaintiff must exhaust administrative remedies under 8 U.S.C. § 1421(c) because the agency lacked jurisdiction to deny the plaintiff's naturalization application once he filed in a district court under 8 U.S.C. § 1447(b)); Meyersiek v. U.S. Citizenship and Immigration Serv., No. CA 05-398 ML, 2006 WL 1582397 at *2 (D.R.I. 2006)("Because Petitioner invokes the Court's jurisdiction under 8 U.S.C. § 1447(b), there is no requirement that he exhaust administrative remedies.")(citing United States v. Hovespian, 359 F.3d at 1162-63; Alkenani v. Barrows, 356 F.Supp.2d 656, 655 (N.D.Tex. 2005)("[P]etitioner is not challenging the denial of his naturalization application. Rather, he seeks judicial intervention pursuant to 8 U.S.C. § 1447(b) because the immigration service has yet to decide his appeal. Under these circumstances, there are no administrative remedies to exhaust.").

The Tenth Circuit has not spoken to this issue.  See Al-Tubaili v. Gonzales, No. 2:06CV804 DAK, 2007 WL 2220550 at * 2, Maki v. Gonzales, No. 2:06CV794 DAK, 2007 WL 2220532 at *2, Al-Saleh v. Gonzales, 2007 WL 990145 at *2.  The District Court for the District of Utah has

recognized that "there is a split of authority in the courts that have faced the issue." <u>Al-Saleh v. Gonzales</u>, No. 2:06-CV-00604 TC., 2007 WL 990145 at *2.  <u>See Al-Tubaili v. Gonzales</u>, No. 2:06CV804 DAK, 2007 WL 2220550 at * 2 ("There is a split of authority among the courts that have faced this question."), <u>Maki v. Gonzales</u>, No. 2:06CV794 DAK, 2007 WL 2220532 at *2 ("There is a split of authority among the courts that have faced this question.").

<u>ANALYSIS</u>

While the Court is always reluctant to choose a path neither party briefed or fully advances at the hearing, or that another court has fully embraced, the Court believes that most of the other opinions have read into the statute conditions that Congress did not expressly incorporate.  While the Court agrees with Judge Hamilton's dissenting opinion in <u>Etape v. Chertoff</u> that the filing of a suit under § 1447(b) does not strip the USCIS of jurisdiction, the Court does not believe that the USCIS' action moots the federal court case.   There is no dispute that the Court had jurisdiction when Bou Hamdan filed his action, and there is nothing in the statute that can fairly be read to say the Court lost jurisdiction when the USCIS belated ruled on Bou Hamdan's application.

**I.     THE COURT WILL ISSUE AN EXPEDITED RULING BEFORE 10:00 A.M. ON DECEMBER 17, 2007, ON THE DEFENDANTS' MOTION TO DISMISS.**

Bou Hamdan urgently needs a ruling from the Court on the issue whether the Court has jurisdiction and will hear his petition for naturalization.  <u>See</u> Unopposed Request for Expedited Ruling, filed Dec. 4, 2007 (Doc. 30).  If the Court rules it no longer has jurisdiction, Bou Hamdan must file his administrative appeal by December 19, 2007.  <u>See id.</u> ¶ 4, at 1.  If Bou Hamdan does not file his administrative appeal by December 19, 2007, he is permanently precluded from appealing the USCIS' adverse decision on his application for citizenship.  <u>See id.</u> ¶ 5, at 2. Bou Hamdan currently has a scheduled appointment with the USCIS to discuss his application on

-24-

December 17, 2007.  <u>See</u> Tr. at 2:23-3:4 (Johnson).

## II.   THE COURT HAS CONCURRENT JURISDICTION WITH THE USCIS UNDER 8 U.S.C. § 1447(b) OVER BOU HAMDAN'S NATURALIZATION APPLICATION.

While no court has adopted the position that the Court believes is most consistent with the plain language of the statute, some courts have agreed with at least some portions of the Court's construction.  Judge Hamilton's dissenting opinion in <u>Etape v. Chertoff</u> found that the filing of a § 1447(b) cause of action does not strip the USCIS of its jurisdiction.  On the other hand, the USCIS' belated ruling on an application does not divest the federal court of jurisdiction that has been properly invoked.

### A.   THE STATUTE'S PLAIN LANGUAGE DOES NOT SUPPORT A CONSTRUCTION THAT THE FILING OF AN ACTION UNDER § 1447(b) STRIPS THE USCIS OF JURISDICTION TO PROCEED ON THE APPLICATION.

The Court begins with the plain language of 8 U.S.C. § 1447(b).  <u>See</u> <u>Been v. O.K. Industries, Inc.</u>, 495 F.3d at 1227.  The statute's language indicates that the district court's original jurisdiction is premised on the USCIS' failure to make a determination on a naturalization application within a 120-day period.  <u>See</u> 8 U.S.C. § 1447(b) ("If there is a failure to make a determination . . . before the end of the 120-day period . . . the applicant may apply to the United States district court.").  There is nothing in the statute that strips the USCIS of its jurisdiction to determine a pending application following the filing of a claim in district court.

8 U.S.C. § 1447(b) provides that a district court "has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the [USCIS] to determine the matter." <u>Id.</u>  Nothing in the statute's plain language purports to divest the USCIS of jurisdiction over application for naturalization.  Rather, the text provides no more than a grant of jurisdiction to the district court if the applicant chooses to file in district court.

As Senior Circuit Judge Hamilton stated in his dissent in <u>Etape v. Chertoff</u>:

Certainly, the statutory grant of jurisdiction to district courts to determine the matter ensures that naturalization applicants have judicial recourse when the [US]CIS fails to act . . . . For example, a district court may believe that a remand to the [US]CIS with instructions to decide the matter within a specified time period, for example thirty days, would best effectuate this purpose.  None of this means, however, that the Attorney General, through the [US]CIS, is stripped of his statutorily conferred authority, based upon unique expertise in immigration and naturalization matters, to determine naturalization applications . . . . The potential escape hatch from delay in the administrative processing of naturalization applications provided by § 1447(b) is just that -- a mechanism to spur the [US]CIS to decide naturalization applications or risk such applications being decided outside the agency.

<u>Etape v. Chertoff</u>, 497 F.3d at 393.

In <u>Al-Saleh v. Gonzales</u>, the district court reasoned that, "[a]lthough the issue is far from clear, this court believes that the better reasoned view is that § 1447(b) does not divest the USCIS of jurisdiction," <u>Al-Saleh v. Gonzales</u>, No. 2:06-CV-00604 TC., 2007 WL 990145 at *2, because "permitting the USCIS to continue its work even while a lawsuit is pending will advance the congressional goal of timely resolution of naturalization applications." <u>Id.</u>  The court was not convinced that "[t]he fact that § 1447(b) gives an applicant the right to file suit in federal court after the 120-day period has elapsed . . . [is enough], by itself, a sufficient indication that Congress intended to strip the USCIS of jurisdiction once a federal suit is filed."  2007 WL 990145 at *2. <u>See</u> <u>Al-Tubaili v. Gonzales</u>, No. 2:06CV804 DAK, 2007 WL 2220550 at * 2  ("[T]his court finds that the better-reasoned view is that section 1447(b) does not divest the USCIS of jurisdiction.")(citing <u>Al-Saleh v. Gonzales</u>, No. 2:06-CV-00604 TC., 2007 WL 990145 at *2, <u>Perry v. Gonzales</u>, 472 F.Supp.2d at 630); <u>Maki v. Gonzales</u>,  No. 2:06CV794 DAK, 2007 WL 2220532 at *2 ("While Plaintiff's filing of the instant action undoubtedly was the catalyst for USCIS to finally determine Plaintiff's application for naturalization -- and the court regrets that Plaintiff had to wait almost four years for resolution -- this court finds that the better reasoned view is that section 1447(b) does not

divest the USCIS of jurisdiction.").

The decisions in United States v. Hovsepian and Etape v. Chertoff read more into the statutory language than is there.  As noted in Perry v. Gonzales, the Ninth Circuit in United States v. Hovsepian believed that concurrent jurisdiction would "frustrate the purpose of § 1447(b) because the USCIS would no longer have incentive to act within the 120-day period."  472 F.Supp.2d at 629 (citing United States v. Hovsepian, 359 F.3d at 1163).  The court in Perry v. Gonzales stated: "The inescapable conclusion is that much judicial time and resources will be saved if [US]CIS is not stripped of jurisdiction while the matter is pending in the district court."  472 F.Supp.2d at 629. Although the court in Perry v. Gonzales bases much of its statutory analysis on the overturned case of Etape v. Chertoff, 446 F.Supp.2d.408 (D.Md. 2006), rev'd, Etape v. Chertoff, 497 F.3d 379 (4th Cir. 2007), the court held that "[a]bsent clear facts, the Court should not base policy on speculations such as 'concurrent jurisdiction might cause a rushed decision making process and might increase the possibility that mistakes will be made.'"  Perry v. Gonzales, 472 F.Supp.2d at 630 (quoting United States v. Hovespian, 359 F.3d at 1164).

While the Court is not as confident as the court in Perry v. Gonzales that concurrent jurisdiction will save time and resources, it may in certain cases.  Moreover, if the USCIS rules in the applicant's favor, it most likely will bring the federal case to an end.  In any case, concurrent jurisdiction does not create any insurmountable problems or lead to an absurd result.

The Court does not believe that the plain language of 8 U.S.C. § 1447(b) supports an interpretation of exclusive jurisdiction in the federal district court.  The statute states "[s]uch court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter."  8 U.S.C. § 1447(b).  Interpreting this language to confer exclusive jurisdiction, as Bou Hamdan contends, would require the court to

-27-

read the word "exclusive" into the above language.

**B.** **THE COURT'S CONSTRUCTION THAT THE FEDERAL COURT DOES NOT OBTAIN EXCLUSIVE JURISDICTION IS CONSISTENT WITH THE LEGISLATIVE HISTORY.**

The original language for § 1447(b) provided: "Where there has been a failure to make a determination under section 335 before the end of the 90-day period after the date on which the examiner is conducted under such section, the United States district court for the district in which the applicant resides shall upon the demand of the petitioner exercise exclusive jurisdiction over the matter." H.R. Rep. No. 101-187 at 5 (emphasis added). The enacted § 1447(b) provides: "If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." 8 U.S.C. § 1447(b)(emphasis added).  Congress knows how to vest the federal district courts with exclusive jurisdiction if it wants to.  As House Report No. 101-187 demonstrates, Congress contemplated making the federal district court's jurisdiction under § 1447(b) exclusive, but the enacted version omitted the word "exclusive."  Compare H.R. Rep. No. 101-187 at 5 with 8 U.S.C. § 1447(b).  The Court's construction of 8 U.S.C. § 1447(b) accords with the congressional intent evidenced in the legislative history of the statute.

**C.** **THE PURPOSE OF THE STATUTE SUPPORTS THE COURT'S CONSTRUCTION.**

The primary purpose of the statute is to expedite the process for the applicant.  See United States v. Hovsepian, 359 F.3d at 1162 (characterizing 8 U.S.C. § 1447(b)  as  a mechanism for

"impatient" applicants to skip the agency's analysis of their application and proceed directly to the step in which the district court conducts a de novo review of the application.). The legislative history of 8 U.S.C. § 1447(b) suggests that the purpose was to expedite adjudication of naturalization applications. By finding that the USCIS can give up its exclusive jurisdiction if it does not get its work done in 120 days, the Court's construction advances that congressional purpose.

The Court does not agree with the Ninth Circuit's assumption that concurrent jurisdiction would "cause a rushed decision making process and might increase the possibility that mistakes will be made." United States v. Hovespian, 359 F.3d at 1164. While courts and other decision-makers make decisions under time pressure, such decisions do not necessarily translate into poor decisions. Moreover, leaving jurisdiction with the USCIS promotes another purpose of § 1447(b). The Court agrees with Senior Judge Hamilton's argument that "Congress fervently believed the Attorney General, through the employees of the [US]CIS, who possess unique expertise in the field of immigration and naturalization, is in the best position to decide naturalization applications." Etape v. Chertoff, 497 F.3d at 392 (Hamilton, J., dissenting).

The Court believes that an interpretation of concurrent jurisdiction best reflects the congressional purpose for 8 U.S.C. § 1447(b), because it allows the applicant to "spur the [US]CIS to decide naturalization applications or risk such applications being decided outside the agency." Etape v. Chertoff, 497 F.3d at 393 (Hamilton, J., dissenting). The Court believes that the "reading [of] § 1447(b) as providing the district court with concurrent jurisdiction to decide naturalization applications fully supports Congress' delay-eliminating-purpose." Etape v. Chertoff, 497 F.3d at 393. The Court's construction puts real teeth into § 1447(b), because if the USCIS does not do its work within the time that Congress has provided, they run the risk that the Court may do it.

**III.**   **THE USCIS' DECISION DOES NOT MOOT THIS ACTION.**

The Defendants have not sustained their heavy burden to prove mootness, either in a constitutional sense or in a prudential manner.  See Chavez v. Board of Educ. of Tularosa Mun. Schools, No. CIV 05-380 JB/RLP, 2006 WL 4060668 at *4 ("The burden of establishing mootness is a heavy one.").

Judge Hamilton appears to have concluded that the unfavorable decision by USCIS divested the federal court of its jurisdiction.  This construction of the statute is premised on a reading of its language that jurisdiction for a district court is premised on the USCIS' failure to make a determination on a naturalization application.  But such a reading deletes words that Congress included and adds words not present.

The federal court obtains jurisdiction "[i]f there is a failure to make a determination . . . before the end of 120-day period  . . . ."  The Court's jurisdiction is not dependent on the USCIS' failure to rule, but on the USCIS' failure to rule within 120 days.  There is nothing in the statute that says the USCIS' belated decision divests a federal court, where jurisdiction was properly invoked, to lose it.

The case is not constitutionally moot.  If the Court decides Bou Hamdan's naturalization application -- which remains very much at issue -- the decision will "affect the matter in issue in the case before it." Southern Utah Wilderness Alliance v. Smith, 110 F.3d at 727.  Nothing that USCIS has done has changed the fact that the Court -- either under § 1447(b) or § 1441 -- ultimately may be the arbiter of this issue, and it remains alive until the federal court decides the issue or the parties cease seeking relief.

The case also does not suffer from prudential mootness.  Until the USCIS grants Bou Hamdan citizenship, he has not secured the relief that he seeks.  Section § 1447(b) is not mooted by

any decision of the USCIS, as Judge Hamilton suggests.  Rather, the federal case is completely mooted only when the circumstances so change that they "forestall any occasion for meaningful relief." Southern Utah Wilderness Alliance v. Smith, 110 F.3d at 727.   Because the Court could still rule in Bou Hamdan's favor, it can afford him meaningful relief.

Because the Defendants have not provided Bou Hamdan with a final agency determination on his naturalization application in his favor, the USCIS' decision did not moot this matter. Moreover, the USCIS has not adjudicated Bou Hamdan's application in his favor, so the harm that Bou Hamdan alleges that USCIS is responsible for is ongoing.  See Complaint ¶ 5, at 2.  As such, Bou Hamdan's claim against the Defendants is not moot.  The controversy between Bou Hamdan and the Defendants remains live.

The parties do not dispute that the Court had jurisdiction over Bou Hamdan's case when he filed it because at the time he invoked federal court jurisdiction, the USCIS had not ruled and 120 days had passed.  See Tr. at 31:24-32:2 (Court & Zavitz).  The Court is reluctant to read into the statute language that divests the federal court of jurisdiction it certainly had.  Until there is a favorable decision from the USCIS for Bou Hamdan, or until the parties cease this litigation voluntarily, the dispute remains live.

## IV.    THE COURT WILL RETAIN JURISDICTION OVER BOU HAMDAN'S NATURALIZATION APPLICATION.

While the Court continues to have jurisdiction despite the USCIS' ruling, the question remains what the Court should do.  The statute indicates that the Court can decide the matter or remand to the USCIS with instructions.  Under the circumstances of this case, the Court will exercise its jurisdiction to decide the case.

A.   **THE COURT'S INTERPRETATION IS NOT INCONSISTENT WITH THE LANGUAGE OF THE STATUTE AND DOES NOT CREATE ABSURD RESULTS.**

Contrary to the fears of the Ninth Circuit in <u>United States v. Hovespian</u>, the Court is not "forced to accept" the USCIS' determination of a naturalization application if the applicant is not satisfied with the decision.  <u>See</u> <u>United States v. Hovespian</u>, 3596 F.3d at 1160.  As the Court has determined, the plain language of 8 U.S.C. § 1447(b) does not indicate that the Court loses its jurisdiction if the USCIS rules, and it would require reading something into the statute to find that the Court loses jurisdiction if USCIS rules.  If the applicant chooses, the federal court may be the final arbiter of his application.

It is true that, to secure federal jurisdiction under § 1421(c), the applicant must exhaust the administrative process and then file with the district court for a determination de novo under 8 U.S.C. § 1421(c).  The Court's function is to enforce 8 U.S.C. § 1447 (b) according to its terms.  <u>See</u> <u>Lamie v. U.S. Trustee</u>, 540 U.S. at 534 ("It is well established that when the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms.")(internal quotations omitted).  Even though the Court has determined that it has concurrent jurisdiction with the USCIS over Bou Hamdan's application and the USCIS has not made a final determination on Bou Hamdan's naturalization application, he is not excused from exhausting the administrative process before requesting a de novo determination by this Court under § 1421(c).  <u>See</u> <u>Dimopoulos v. Blakeway</u>, No. C-07-127, 2007 WL 922224 at *4-5 (S.D.Tex. Mar. 23, 2007)(rejecting the argument that the plaintiff must exhaust administrative remedies under 8 U.S.C. § 1421(c) because the agency lacked jurisdiction to deny the plaintiff's naturalization application once he filed in a district court under 8 U.S.C. § 1447(b)).  If Bou Hamdan wants de novo review under § 1421(c), he needs to exhaust the

administrative process, file a separate action in federal court, and move to consolidate.  But there are no administrative remedies to exhaust under § 1447(b) once the applicant waits over 120 days to file his federal suit under § 1447 (b).  See Meyersiek v. U.S. Citizenship and Immigration Serv., No. CA 05-398 ML, 2006 WL 1582917 at *2 (D.R.I. 2006)("Because Petitioner invokes the Court's jurisdiction under 8 U.S.C. § 1447(b), there is no requirement that he exhaust administrative remedies.")(citing United States v. Hovespian, 359 F.3d at 1162-63); Alkenani v. Barrows, 356 F.Supp.2d 656, 655 (N.D.Tex. 2005)("[P]etitioner is not challenging the denial of his naturalization application. Rather, he seeks judicial intervention pursuant to 8 U.S.C. § 1447(b) because the immigration service has yet to decide his appeal. Under these circumstances, there are no administrative remedies to exhaust.").

The Court does not dispute Judge Hamilton's observation that "superior efficiency of a de novo district court review on a fully developed record, pursuant to § 1421(c), as compared to initial review by the district court on perhaps no record at all or on an incomplete administrative record, pursuant to § 1447(b), is obvious." Etape v. Chertoff, 497 F.3d at 394 (Hamilton, J., dissenting). The Court is not convinced, however, that the options are so extreme.  Both parties agree that the de novo review under § 1421(c) is basically a trial and that the Court may allow new evidence.  See Tr. at 23:8-18 (Court & Johnson); id. at 34:3-7 (Court & Zavitz).  Moreover, both parties agree that there needs to be a similar trial under § 1447(b).  See  Tr. at 23:8-18 (Court & Johnson); id. at 34:3-7 (Court & Zavitz).  Thus, whether the Court retains jurisdiction under § 1447(b) and § 1421(c), or forces Bou Hamdan to proceed only under § 1421(c), the result will most likely be the same: A trial in federal court.

## B.      A FEDERAL COURT DECISION APPEARS INEVITABLE IN THIS CASE.

Bou Hamdan has expressed his desire for a federal court decision.  Bou Hamdan has

expressed doubts that he can get a fair proceeding in the USCIS, regardless who hears his case.  The Court need not decide whether Bou Hamdan's fear has a reasonable basis in fact.  It is sufficient for the Court to make some reasonable assessment whether it will be able to avoid the use of judicial resources if it remands the case to the USCIS for exhaustion of administrative remedies.  In this case, the Court does not see how it is going to avoid a federal court case until it or the USCIS rules in Bou Hamdan's favor.

The Defendants urge the Court to remand, with instructions to complete this appeal within 180 days and assign the file to someone outside of the district.  While it is possible that Bou Hamdan may secure a favorable decision in the USCIS, it is unlikely that Bou Hamdan will be satisfied with any unfavorable decision.  Moreover, in six months, the matter will be very close to trial.  In fairness to Bou Hamdan, it does not seem fair to make him wait six months to get where he already is today, especially given that the USCIS belatedly entered its decision.  The Court does not believe that Elsaar v. Mueller, 2007 WL 3377445 at *3, alters its logic.  The court in Elsaar v. Mueller perfunctorily remanded to the USCIS because it would "allow[ ] Plaintiff to exhaust his administrative appeal under § 1447(a)."  2007 WL 3377445 at *3.  The Court does not believe that under the facts and circumstances of this case it would be more appropriate to remand to the USCIS than for it to retain jurisdiction.

The Court chooses to retain its jurisdiction under 8 U.S.C. § 1447(b), and will not remand this matter to the USCIS.  The USCIS remains free to "bring its expertise to bear on the matter [and] evaluate the evidence" during Bou Hamdan's exhaustion of administrative remedies if he chooses to obtain a final agency determination.  Khelifa v. Chertoff, 433 F.Supp.2d at 843 (internal quotations omitted).  The Court will not, however, force him to only go the administrative route now that the USCIS has belatedly ruled.

**IT IS ORDERED** that Defendants' Motion to Dismiss Based on Mootness, or in the Alternative for Remand and Memorandum in Support is denied.  The Unopposed Request for Expedited Ruling is granted.  The Court will retain concurrent jurisdiction over the Plaintiff's naturalization application, set it for trial, and issue an initial scheduling order to the parties.  The plaintiff may obtain a final agency determination and then file suit under 8 U.S.C. § 1421, which the Court may consolidate with this case, or proceed only in this case; the option is now his.


_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Erlinda O. Johnson
Albuquerque, New Mexico

    *Attorney for the Plaintiff*

Larry Gomez
  Acting United States Attorney
John Zavitz
  Assistant United States Attorney
United States Attorney's Office for the
  District of New Mexico
Albuquerque, New Mexico

    *Attorneys for the Defendants*